UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JOAN M. PRENDERGAST and RICHARD
PRENDERGAST,

                Plaintiffs,

      - against -

HOBART CORPORATION, a division of ITW
FOOD EQUIPMENT GROUP LLC,
AIRLINE CLEANERS INC., and AIRWAY
CLEANERS, LLC,

                Defendants.
-----------------------------------------------------------X

MEMORANDUM
AND ORDER
04-CV-5134 (SMG)

GOLD, S., U.S.M.J.:

## Introduction

Plaintiff Joan Prendergast ("Prendergast" or "plaintiff") alleges that she was injured on May 18, 2004, when she tripped and fell on a puddle of water in the kitchen area of the Delta Crown Room at LaGuardia Airport. At the time of her accident, plaintiff was working for Delta in the Crown Room as a customer service agent. Plaintiff brings this diversity action against defendant Hobart Corporation[1] ("Hobart" or "defendant") claiming that its negligent repair of the dishwasher in the Crown Room caused a flood that led to her injury.[2] Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that plaintiff cannot establish a *prima facie* case of negligence. More specifically, defendant contends that the undisputed evidence demonstrates that Hobart owed no duty of care to plaintiff and therefore

---

[1] Hobart is now known as ITW Food Equipment Group LLC.

[2] Plaintiff's claims against defendants Airway Cleaners LLC and Airline Cleaners, Inc., were dismissed on summary judgment. Docket Entry 78 & Minute Entries dated December 4, 2008.

may not be held liable to her. For the reasons that follow, defendant's motion for summary judgment is granted.

**Facts**

The facts are construed in the light most favorable to Prendergast, the non-moving party, and they are derived from the parties' Local Rule 56.1 statements, and the exhibits, depositions and expert reports submitted by the parties in connection with the pending motion.

On May 17, 2004, Hobart service technician Melvin Baez ("Baez") was dispatched to the Delta Crown Room at LaGuardia Airport in response to a complaint that a Hobert model dishwasher was not working properly. Def. 56.1 ¶ 1, Docket Entry 101; Baez Dep. 77, 87, 172.[3] During his repair of the dishwasher, Baez replaced several worn parts. Def. 56.1 ¶ 2; Baez Dep. 87. In addition, he noticed that the "long hose" "was all bubbled up" and looked like it was "about to erupt." Baez Dep. 153-55. Baez did not have a replacement long hose with him. *Id*. at 162. Baez determined, however, that even though the long hose was worn and needed eventual replacement, it was not in a failed condition, it was not causing any problems, and it was not leaking water. *Id*. at 153-55, 162-64, 173, 180. After his repair was complete, Baez ran several test cycles and found that the dishwasher was not leaking. *Id*. at 101, 173-74; Vogel Dep. 60, 82, Docket Entry 99-3. Baez informed Randy Vogel ("Vogel"), acting manager of the Crown Room, that the dishwasher was functioning properly. Vogel Dep. 82.

Between 10 and 30 minutes after Baez left, the dishwasher began to leak. Ortega Dep. 36-38, Docket Entry 103-4; Vogel Dep. 60. Vogel called Baez, and Baez told him to take the washer out of service and that he would return either that night or the next day to repair it. Vogel Dep. 60-62. Vogel shut off the machine, instructed the staff on duty that the machine was not to

---

[3] Excerpts from Baez's deposition transcript can be found at Docket Entries 99-2, 103-3 and 105-3.

be used, and directed one of his employees, Don Stevenson, to alert the morning crew that the dishwasher was broken and that a repairman would be in to fix it. *Id.* at 62-63.

Plaintiff alleges that she arrived at work at around 4:00 a.m. on May 18, 2004, and turned on the dishwasher. Shortly thereafter she slipped on water that allegedly leaked from the dishwasher. Prendergast Dep. 88-90, Docket Entry 99-1. There was no sign or other indication that the dishwasher was out of order or should not be used at the time Prendergast turned it on. Docket Entry 78 at 2.

Baez returned to the Crown Room on May 18 to repair the dishwasher. He testified that the long hose had not failed and that it was still not leaking water. Baez Dep. 181. At some point that day, he left the Crown Room to obtain a new long hose and then returned a few hours later to replace the old one. Baez Dep. 160, 181; Hobart Service Report dated 5/18/04, Docket Entry 103-6 at 32. Vogel did not call Hobart again for service that week. Vogel Dep. 90. The Hobart service reports indicate that the next date of service was June 1, 2004. Hobart Service Report dated 6/1/04, Docket Entry 103-6 at 33.

The dishwasher repair was undertaken pursuant to a service contract between Hobart and Delta that provided for repair "upon request." The contract specifically excluded inspection and preventative maintenance services. Def. 56.1 ¶ 8; Service Contract, Docket Entry 99-4 at 3. A section of the contract headed "Service Contract Terms and Conditions" states that "Inspections and Preventative Maintenance services are not part of this Service Contract but may be provided as an option at additional cost." Service Contract, Docket Entry 99-4 at 3. There is no evidence indicating that Delta purchased the optional inspection and preventative maintenance services. According to Delta Crown Room employees Mary Michniewicz and Cheryl Binz, an in-house

3

maintenance crew at LaGuardia Airport would occasionally inspect the dishwasher. Def. 56.1 ¶ 9; Binz Dep. 124, Docket Entry 99-6; Michniewicz Dep. 107-09, Docket Entry 105-7.

## Expert Reports

A. Plaintiff's Expert

Plaintiff has submitted a report of a retained expert, Ali Sadegh, Ph.D., a mechanical engineer and professor of mechanical engineering, biomechanics and automotive safety design at The City University of New York. Sadegh Report 8, Docket Entry 105-1. Sadegh based his findings in this case on his review of, *inter alia*, Hobart service tickets, the Hobart/Delta service contract, Hobart repair and service manuals, and the deposition transcripts of plaintiff, Baez and other witnesses. *Id*. at 2. In pertinent part, Sadegh states in his expert report that the "repairs done by Mr. Baez on May 17, 2004, were done in [a] negligent and careless manner [because Baez] admits that he observed the bubbled up long hose about to erupt and left the area." *Id*. at 7. Sadegh also states that Baez should have disconnected the dishwasher's main power source and tagged the machine "out of service" after he observed that the long hose was "bubbled" and "about to erupt." *Id*. at 5-6. Sadegh concludes that "[i]t is highly likely that the flooding of the kitchen floor was due to the leaking of the long hose. This is due to the fact that Mr. Baez changed the long hose after the accident and it stopped the leakage. The long hose was the conduit for hot and soapy water." *Id*. at 6-7.

During his deposition, Sadegh conceded that he did not have any specific education in commercial kitchen appliances, that he has never worked in the appliance repair industry, and that he was not holding himself out as an expert in the field of appliance repair. Sadegh Dep. 8-10, 19, 119, Docket Entry 105-1. When asked whether there was "any written code or standard that was important to [his] analysis in this case," Sadegh responded that he "does not believe so"

4

and that his opinions were based on "common sense." *Id*. at 23. He further stated that Baez "violated the standard care of maintenance," although he could "not recall any specific standard to be violated." *Id*. at 147. In response to the question: "Is it your opinion to a reasonable degree of engineering certainty that Mr. Baez actually damaged the long hose when he was there before the accident?" Sadegh responded: "I don't know." *Id*.

Plaintiff subsequently submitted an affidavit from Sadegh in support of her opposition to summary judgment. In the affidavit, Sadegh states, in pertinent part, that Baez "increased the risk of rupture of the long hose" by "running the machine through several cycles" and by putting his tools in contact with the hose. Sadegh Aff. ¶ 16, Docket Entry 103-9.

B. Defendant's Experts

Defendant retained two experts, Sal Malguarnera ("Malguarnera") and John Karassik ("Karassik"). Malguarnera is a mechanical engineer with education and experience in engineering and servicing commercial kitchen products, including dishwashers. Malguarnera Report 2, Docket Entry 105-5. Malguarnera provided an expert report describing how the alleged accident occurred based upon, *inter alia*, his observations of the scene of the accident and pleadings and discovery materials submitted in connection with this case, including deposition transcripts, plaintiff's expert reports, and service manuals for the dishwasher. *Id*. at 1-2. Malguarnera concluded in his report that there was no evidence that the repairs performed by Baez "were done in an improper or unworkman-like manner or that they led to the water leak that [plaintiff] alleges caused her to fall." *Id*. at 6.

At his deposition, Malguarnera testified that a repairman such as Baez could only suggest or recommend to the owner that a dishwasher be taken out of service but lacks the authority to take it out of service himself. Malguarnera Dep. 105, Docket Entry 105-5 ("The technician who

5

doesn't own or control that unit cannot take it out of service."). Malguarnera further testified that he would recommend to the owner to take the machine out of service *only if* it were leaking. However, Malguarnera stated, "[i]f it's not leaking and the owner needs it, then it is not unreasonable to allow [the owner] to continue to use it until [the repairman] can replace that part." *Id*. at 106-07. Accordingly, Malguarnera reasoned, there was no need for Baez to recommend that the machine be taken out of service because Baez had run it through several cycles and determined that it was not leaking and he expected to return the next day with a replacement for the long hose. *Id*. at 112-13. Finally, Malguarnera stated that, once the machine was leaking, and Baez told Vogel not to use it, it was Delta's responsibility to inform staffers that the machine was out of service, to put an out of order sign on the machine, and to disconnect the circuit breaker. *Id*. at 135-36.

Karassik provided an expert report on whether Baez met the appropriate standard of care when he serviced the machine on May 17, 2004. Karassik's opinion is based on his career in commercial dishwasher manufacturing, custom machine design, and preventative maintenance and repair. Karassik Report 1, Docket Entry 105-4. Karassik reported that "[i]t would have been inappropriate for Mr. Baez to take the machine out of service by tagging out/locking out the machine given that the machine was working properly when his repair work was done on the afternoon of the 17th." *Id*. at 8. *See also* Karassik Dep. 123-24, Docket Entry 105-4. He further stated that it was appropriate for Baez to instruct Vogel to turn the machine off when another leak was reported. Karassik Report 8.

**Discussion**

A. Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). An issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991). In reaching a summary judgment determination, the court must resolve ambiguities and draw reasonable inferences in favor of the nonmoving party. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991). The moving party bears the initial burden of establishing that there are no genuine issues of material fact; once he does so, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations, however, are insufficient and "[t]here must be more than a 'scintilla of evidence'" to defeat a motion for summary judgment. *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252).

B. Expert Reports

As discussed in greater detail below, the primary question raised by defendant's motion is whether Baez "launched an instrument of harm," or created a dangerous condition, when he made his repairs on May 17, 2004. The resolution of this question depends in large part on expert testimony. Expert discovery closed on November 1, 2009. *See* Minute Entry dated September 1, 2009. Plaintiff, however, submitted a new affidavit from Sadegh with her opposition to summary judgment on March 25, 2010. Plaintiff also submitted a second expert

report after the motion was briefed and argued. During oral argument on April 23, 2010, I permitted plaintiff to submit a supplemental letter for the limited purpose of directing the court's attention to the portions of Malguarnera's deposition transcript that plaintiff contended supported her position in this case. Tr. of 4/23/10 at 32-35, Docket Entry 111. Plaintiff responded to this request, but when doing so also submitted an expert report of Vincent Gebbia that she had not previously submitted in opposition to defendant's motion. *See* Docket Entry 109-4. Defendant seeks to strike the new opinions in Sadegh's affidavit submitted in opposition to summary judgment and to exclude the Gebbia expert report because it was not submitted until after briefing was complete and oral argument was held. I address each of these issues in turn.

First, defendant seeks to strike certain statements in Sadegh's affidavit because they are new opinions not contained in Sadegh's expert report and because they contradict Sadegh's deposition testimony. More specifically, defendant seeks to strike Sadegh's statements that Baez "increased the risk of rupture of the long hose" when he made his original repairs by "running the machine through several cycles" and by putting his tools in contact with the hose. Sadegh Aff. ¶ 16.

Defendant correctly notes that these statements were not contained in Sadegh's expert report. The Federal Rules require that any expert retained to testify at trial submit a report setting forth "a complete statement of all opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i). Moreover, Rule 37(c)(1) provides that a party who fails to disclose information required by Rule 26(a), "is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). *See also United States v. Vulcan Society, Inc.*, 637 F. Supp. 2d 77, 105-08 (E.D.N.Y. 2009). Plaintiff had ample time for expert discovery in this case and

has provided no justification for her failure to disclose the opinions in Sadegh's affidavit with his expert report or during his deposition. The opinions set forth for the first time in Sadegh's affidavit are therefore properly stricken on this ground alone.

Furthermore, these new opinions are speculative and entirely unsubstantiated. During his deposition, Sadegh conceded that he is not an expert in appliance repair, yet he provides no basis other than his own expertise for the conclusion in his affidavit that Baez's repair of the dishwasher increased the risk that the long hose would rupture. Finally, Sadegh's new opinions are highly prejudicial—and are therefore not harmless—as they directly address whether Baez's actions give rise to defendant's liability. *See Vulcan*, 637 F. Supp. 2d at 107 (finding that the expert's "largely conclusory and unsupported statements strongly suggest an attempt by the [defendant] to 'sandbag' its opponents with new opinions designed to defeat summary judgment") (internal citations omitted).

The opinions must also be stricken from the record because they contradict Sadegh's deposition testimony. During his deposition, in response to the question, "[i]s it your opinion to a reasonable degree of engineering certainty that Mr. Baez actually damaged the long hose when he was there before the accident," Sadegh responded, "I don't know." Sadegh Dep. 147. Now, in his affidavit, Sadegh claims to provide two explanations—based on "a reasonable degree of mechanical engineering certainty"—for how Baez damaged the long hose on May 17. These new explanations are not based on any new evidence or information that was not available to Sadegh when he prepared his original report or testified at his deposition. A party may not create an issue of fact by submitting an affidavit that contradicts her expert's prior deposition testimony. *Hayes v. NYC Dep't of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). For all these

reasons, I decline to consider the statements contained in paragraph 16 of Sadegh's affidavit in deciding the pending motion.

Second, defendant seeks to strike plaintiff's submission of Vincent Gebbia's expert report. As noted above, during oral argument, I permitted plaintiff to submit a brief supplemental letter addressing those portions of Malguarnera's deposition transcript that plaintiff contended supported her position in this case. Excerpts from Malguarnera's deposition transcript as well as his expert report were already part of the record. Plaintiff, however, included Gebbia's expert report, which plaintiff had not previously submitted in opposition to defendant's motion.[4] This submission exceeds the scope of my Order, and I therefore decline to consider Gebbia's expert report in connection with the resolution of the instant motion. In any event, Gebbia's expert report fails to raise an issue of fact with respect to whether Baez created a dangerous condition during his repair of the dishwasher on May 17, 2004. Rather, Gebbia opines only that the leak was caused by a failure of the long hose and that Baez should have taken the dishwasher out of service and disconnected the power after observing that the long hose was bubbling and about to erupt. Docket Entry 109-2.

C. Duty of Care to a Third Party

Plaintiff's complaint asserts a claim of negligence against Hobart. To establish a *prima facie* case of negligence, Prendergast must demonstrate: first, that defendant owed her a duty; second, that defendant breached that duty; and, third, that plaintiff suffered the injuries of which she complains as a result of defendant's breach. *Vangeli v. Schneider*, 598 N.Y.S.2d 837, 839

---

[4] Plaintiff also quotes from Gebbia's deposition transcript in her supplemental letter. *See* Pl. Ltr. dated 4/27/2010, Docket Entry 109. Gebbia's deposition transcript, however, is not attached to plaintiff's letter nor has it otherwise been submitted to the court as part of the record on this motion.

10

(3d Dep't 1993). Defendant has moved for summary judgment on the ground that it owes no duty of care to plaintiff that would give rise to liability in tort.

"The existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the court." *Fairclough v. All Serv. Equip. Corp.*, 857 N.Y.S.2d 92, 93 (1st Dep't 2008). Under New York law, a contractual obligation will rarely create a duty of care that extends to a third party, unless: (1) "the contracting party, in failing to exercise reasonable care in the performance of his duties, 'launches a force or instrument of harm'"; (2) "plaintiff detrimentally relies on the continued performance of the contracting party's duties"; or (3) the contract is so comprehensive that it entirely displaces the other contracting party's duty to maintain the premises. *Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136, 140-42 (2002) (internal citations omitted). *See also Fairclough*, 857 N.Y.S.2d at 93. Plaintiff contends that defendant owed her a duty of care based upon each of the three exceptions.

      a. *Launches Force or Instrument of Harm*

The first exception requires plaintiff to demonstrate that "in failing to exercise reasonable care in the performance of his duties, [defendant] launche[d] a force or instrument of harm." *Espinal*, 98 N.Y.2d at 140 (internal quotation marks omitted). "[C]ourts have fleshed out the vagaries of this language by emphasizing that this test is met when a defendant creates or exacerbates a harmful condition." *Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 402 (E.D.N.Y. 2010).

Here, the evidence demonstrates that Baez exercised reasonable care when he repaired the dishwasher on May 17, 2004. As discussed above, Baez replaced several parts during his repair. Although he noticed that the long hose was "bubbled up" and "about to erupt" yet neither replaced the part nor took the machine out of service, Baez determined that the long hose's

11

failure was not imminent. According to Baez, the long hose was not leaking or causing any problems. He tested the hose by running the machine through several cycles and observed that the dishwasher was not leaking. This was corroborated by Vogel, who testified that he watched Baez run the machine through a number of cycles, that it was working, and that "there was no indication that anything was leaking." Vogel Dep. 82. Moreover, defendant's experts, both of whom are experienced in commercial kitchen appliance repair, reported that Baez followed the appropriate standard of care when he tested the machine, determined it was not leaking, and allowed it to remain in service. Specifically, Karassik reported that "[i]t would have been inappropriate for Mr. Baez to take the machine out of service by tagging out/locking out the machine given that the machine was working properly when his repair work was done on the afternoon of the 17th." Karassik Report 8. *See also* Karassik Dep. 123-24. Similarly, Malguarnera testified that there was no reason for Baez to recommend that the machine be taken out of service because the machine was not leaking and the owner needed to use it. Malguarnera Dep. 106-07, 112-13. Other than Gebbia's expert report, submitted for the first time after oral argument, and Sadegh's expert report, which does not appear to be based on any identifiable standards or relevant expertise, plaintiff has not presented any evidence that Baez failed to exercise reasonable care.[5]

---

[5] Plaintiff points to Sadegh's affidavit and to Baez's deposition testimony as proof that Baez violated the appropriate standard of care by not taking the machine out of service. Both are inapplicable to this issue. First, as defendant notes, Sadegh conceded during his deposition that he was not holding himself out as an expert in appliance repair. Moreover, he was unable to identify any standard of care that Baez breached and further stated that his opinions were based only upon "common sense." Sadegh Dep. 23. Second, defendant points to Baez's deposition testimony where he stated that he would "lock out" or "tag out" a machine if he determined that it was not working properly. Baez Dep. 58. This testimony is irrelevant to the question of whether Baez breached a standard of care in light of Baez's testimony, corroborated by Vogel and not disputed by plaintiff, that the machine was not malfunctioning and he therefore had no reason to "tag" or "lock [it] out." In any event, the particular practices Baez might follow are not evidence of an industry-wide or other applicable standard of care.

Even if I were to consider plaintiff's expert reports and conclude that they raised a question of fact with respect to whether Baez was negligent, summary judgment would still be appropriate because plaintiff has not presented any evidence of an affirmative act by Baez that launched an instrument of harm. *See, e.g., See Cohen v. Schachter*, 857 N.Y.S.2d 727, 729 (2d Dep't 2008) (noting that a "contractor may be liable for an affirmative act of negligence which results in the creation of a dangerous condition"). Rather, plaintiff's claim of negligence is based only on defendant's alleged omission, *i.e.*, Baez's failure to replace the long hose or take the dishwasher out of service. In general, courts have held that a negligent omission or inaction is insufficient to find that a defendant launched an instrument of harm. For example, in *Church ex rel. Smith v. Callanan Industries, Inc.*, 99 N.Y.2d 104 (2002), the New York Court of Appeals held that defendant was not liable for failing to install additional length in a highway guiderail system as required by its contract and that plaintiff alleged would have prevented his accident. The court noted that defendant "would be immune from liability because the breach of contract consists merely in withholding a benefit . . . where inaction is at most a refusal to become an instrument for good." Because defendant "did nothing more than neglect to make the [highway] *safer*—as opposed to less safe," there was no liability in tort. 99 N.Y.2d at 112. *See also Fairclough*, 857 N.Y.S.2d at 93-94 (holding that defendant's failure to detect and replace a broken iron gate covering a stove burner during routine inspection did not launch a force or instrument of harm); *Stiver v. Good & Fair Carting & Moving, Inc.*, 9 N.Y.3d 253, 257 (2007) (finding, in a case where plaintiff was injured when he collided with a broken-down automobile, that defendant "cannot be said to have launched an instrument of harm since there is no reason to believe that the [defendant's] inspection made [the] vehicle less safe than it was beforehand. . . . Inspecting the car did not create or exacerbate a dangerous condition.").

Plaintiff relies upon *Bienaime v. Reyer*, 837 N.Y.S.2d 737 (2d Dep't 2007), for the proposition that a negligent omission may launch an instrument of harm. In *Bienaime*, the court denied summary judgment where a defendant contractor admitted that he lacked the necessary diagrams to rewire a machine and failed to perform required safety checks before putting the machine back into operation. 837 N.Y.S.2d at 738-39. Plaintiff's expert stated in an affidavit that the contractor's failure to use diagrams and to inspect the machine "violated mandatory practices" and rendered the machine more dangerous. *Id*. at 739. The facts of *Bienamie* are distinguishable. Although the defendant's liability was based partly on the repairman's omissions—*i.e.*, his failure to run safety tests on the machine—questions were also raised as to whether the actual repairs he did make rendered the machine more dangerous. *Id*. For example, the court noted that at least one of defendant's repairs caused the machine to run faster than it had before. *Id*. Thus, *Bienamie* does not directly stand for the proposition plaintiff advocates. Moreover, unlike the repairman in *Bienamie*, Baez *did* check the machine by running it through several cycles to confirm that it was not leaking before putting it back into service.

Plaintiff cites a number of other cases in which a contractor's negligent repair of an object raised an issue of fact as to whether defendant launched an instrument of harm. These decisions offer no support for plaintiff's position, however, because in each, the evidence indicated that the negligent actions of the repairpersons *caused* the objects in question to become more dangerous. *See, e.g., Grant v. Caprice Mgmt. Corp.*, 841 N.Y.S.2d 555, 557 (1st Dep't 2007) (finding issues of fact with respect to whether defendant's negligent installation of a window caused it to fall out if its track and injure plaintiff); *Ruiz v. Peralta*, 841 N.Y.S.2d 823 (N.Y. Sup. Ct. 2007) (denying summary judgment where there were issues of fact as to whether defendant's "numerous repairs [to the traffic light] at the subject intersection were negligently

14

performed, thereby creating the defective condition and 'launching a force or instrument of harm'"); *Ocampo v. Boiler*, 822 N.Y.S.2d 52 (1st Dep't 2006) (finding that defendant may have assumed a duty of care where there was "evidence presented that defendant negligently repaired the machine that had previously been taken out of operation"). There is no such evidence presented by plaintiff in this case.

Viewed as a whole, the evidence presented by plaintiff is insufficient to raise a question of fact as to whether Baez's repair of the dishwasher created a dangerous condition. Although Baez noticed that the long hose needed to be replaced, he also testified that, at the time of his repair, it was not leaking or in danger of leaking. He made sure that it was not leaking by running the machine through several cycles before putting it back into service. In any event, there is no evidence suggesting that Baez did anything to the dishwasher that made it more likely to leak than it was before he made his first repairs.

Moreover, when Vogel called Baez to tell him that the machine was leaking, Baez instructed him to take the machine out of service until he could return to repair it. Thus, even if Baez had launched an instrument of harm during his repair of the dishwasher, he would have, in effect, "pulled back" what he had "launched" by advising Delta to take the dishwasher out of service before the alleged accident occurred. Plaintiff has not explained what practical difference there is between Baez's having instructed Delta to take the machine out of service over the phone, as he did, or in person, as plaintiff asserts he should have. *See, e.g.,* Tr. of 4/23/10 at 16-18. For all these reasons, I conclude that Baez's failure to replace the long hose or to disconnect the machine himself "consist[ed] of withholding a benefit," rather than launching an instrument of harm. *Church ex rel. Smith*, 99 N.Y.2d at 112. Accordingly, to the extent

15

plaintiff's negligence claim relies on this exception to the rule that a contractual obligation does not create a duty to a third party, it fails.

  b. *Detrimental Reliance*

As noted above, as an alternative basis for finding that defendant owed a duty of care, plaintiff contends that she detrimentally relied upon defendant's performance of its contract with Delta. In order to establish detrimental reliance, plaintiff must first show that she had actual knowledge of the contract between the two parties. *See Doona*, 680 F. Supp. 2d at 403. During her deposition, plaintiff testified that she knew that the dishwasher was out of service on May 17, 2004, and that an agent had "called the dishwasher people in." Prendergast Dep. 128. Plaintiff also testified, however, that she had not heard of Hobart and did not know there was a contract between Hobart and Delta before her accident.[6] *Id.* at 85-86.

Although plaintiff may have been generally aware that a repairman was "called . . . in" on May 17, this is insufficient to establish that she detrimentally relied upon Hobart specifically to repair the dishwasher, particularly where she had no knowledge of the underlying contract between Delta and Hobart. *See Occhino v. Citigroup Inc.*, 2005 WL 2076588, at *7 (E.D.N.Y. Aug. 26, 2005) ("Where there is no evidence that a plaintiff had any knowledge of a . . . contract and plaintiff relies solely on his own observations of the surrounding conditions at the time of his accident, a plaintiff has failed to make a valid claim of detrimental reliance."); *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 587 (1994) ("The nexus for a tort relationship

---

[6] Plaintiff has submitted an affidavit in opposition to defendant's motion in which she states that she "knew that Delta had a service agreement with Hobart and that a Hobart repairman was coming to fix the machine." Prendergast Aff. ¶ 8, Docket Entry 103-10. This statement contradicts plaintiff's deposition testimony that she had not heard of Hobart or of the contract between Hobart and Delta before her alleged accident. As discussed above, plaintiff may not create an issue of fact by submitting an affidavit that contradicts her prior deposition testimony. *Hayes*, 84 F.3d at 619. The court, therefore, will disregard the contradictory statements in plaintiff's affidavit.

between the defendant's contractual obligation and the injured noncontracting plaintiff's reliance and injury must be direct and demonstrable, not incidental or merely collateral."). Accordingly, plaintiff's claim fails on this ground.[7]

      c. *Comprehensive Contract*

Lastly, plaintiff argues that defendant owed her a duty of care because Hobart entirely displaced Delta's duty to maintain the dishwasher. To state a claim on this basis, a plaintiff must demonstrate that a defendant's repair duties under the contract are exclusive and not merely performed upon request. *See O'Keefe v. Arbon Equip. Corp.*, 399 F. Supp. 2d 478, 485 (S.D.N.Y. 2005) (citing *Edick v. Paul de Lima Co.*, 775 N.Y.S.2d 385 (3d Dep't 2004)). Plaintiff asserts, without any factual support, that defendant is the "exclusive company" that repairs the dishwasher. In contrast, defendant presented evidence that Delta retained some responsibility for maintaining the dishwasher and, in addition, that the company in charge of building maintenance at LaGuardia would occasionally inspect the dishwasher. Binz Dep. 124; Michniewicz Dep. 107-09. Moreover, the contract with Hobart explicitly states that it does not include inspections and routine maintenance; rather, defendant is under a contractual duty to perform repairs only "upon request" of Delta. Service Contract, Docket Entry 99-4 at 3. This contractual provision, in addition to evidence that another company performed some inspection services, demonstrates that Hobart did not entirely displace Delta's maintenance duties under the

---

[7] Plaintiff also alleges for the first time in her opposition to defendant's motion that she was an intended third party beneficiary of the contract between Hobart and Delta. However, plaintiff makes no such claim in her Second Amended Complaint. Docket Entry 16. In any event, "[a party] asserting third-party beneficiary rights under a contract must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for their benefit and (3) that the benefit to them is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate them if the benefit is lost." *Mendel v. Henry Phipps Plaza West, Inc.*, 6 N.Y.3d 783, 786 (2006). Plaintiff offers no factual support for her assertion that she was an intended third party beneficiary.

contract. *See, e.g., Gartmann v. City of New York*, 890 N.Y.S.2d 5 (1st Dep't 2009) (finding that defendant did not entirely displace owner's responsibility to maintain the premises where the contract obligated defendant to perform "only after the owner asked it to do so"). Plaintiff's claim thus fails on this ground as well.

## **Conclusion**

For all of the reasons stated above, defendant's motion for summary judgment is granted. The Clerk of the Court is directed enter judgment in defendant's favor and dismiss the case.

SO ORDERED.

/s/
**STEVEN M. GOLD**
**United States Magistrate Judge**

Dated: Brooklyn, New York
August 12, 2010

U:\IRM 2008-2009\Predergast v. Hobart\prendergast v. hobart_summary judgment_v2.docx